ALEXANDER J. CAMERON, Respondent *v.* THE TRIBUNE
ASSOCIATION, Appellant.

*Supreme Court, First Department, General Term, December 2, 1889.*

1. *Evidence. Libel.*—In an action for libel, the defendant may, with a
view to mitigate the damages, give evidence to disprove the existence
of a malicious motive at the time of publishing the defamatory matter.
2. *Same.*—Where the plaintiff was charged in the publication with being
an ex-convict, an authenticated copy of his conviction for a violation
of the excise law, after he has stated, on his cross-examination, that
he had been so convicted, is properly admitted in evidence generally in
the case, not only to affect his credibility as a witness, but also to
justify the published statement that he was an ex-convict.

Appeal from a judgment entered on the verdict of a jury.

*James C. Carter*, for appellant.

*Wallace MacFarlane*, for respondent.

BRADY, J.—This was an action to recover damages for
two libelous publications injuriously affecting the plaintiff's
character.   The first was published on the 8th of May, 1885,
by the defendant, and the second upon the 9th of May, 1885.
The first publication contains three distinct assertions, each
of which is clearly libelous if not proved to be true.

*First.* That the plaintiff had swindled a relative.

*Second.* That he was indicted, convicted, sentenced and
served a term of imprisonment for this offense.

*Third.* That he swindled the state of Maine by procuring
the payment of fraudulent bills.

To the first of these a justification was set up in the answer.
The second was undefended.   The third was also justified.

The second publication, namely, that which was made upon
the 9th of May, contained three distinct charges, each of
which was libelous unless proved to be true : First, that the

plaintiff was a swindler ; second, that he was an ex-convict; third, that he had served a term in prison for swindling.

To the first of these charges the same justification as against the prior charge of swindling a relative was alleged. This charge was a repetition, substantially, of the libel contained in the first publication to the same effect. To the second charge, namely, that he was an ex-convict, a justification was set up, and also to the third charge.

These two publications united show four separate charges, of which three were sought to be justified, or, to state it in another way, the answer alleged a justification of all the charges, except that part of the publication which asserted that the plaintiff had been indicted for swindling his relatives, and was tried, convicted and sentenced therefor.

The defendant alleged, in addition to the justification and other matters, that the plaintiff was a man of bad character ; that his general character and reputation were bad, in mitigation of damages, and also for the same purpose that the articles complained of were based upon a telegram received from its correspondent in Boston, in the usual course of business, and were printed by the defendant in good faith and without malice, as items of public news, and sustaining matters of public interest, which it was its duty to publish for the information of the public and the readers of the newspapers, and that the defendant, its editors and publishers, believed the facts contained in the articles to be true.

Upon the various issues springing out of this condition of the pleadings, a large amount of evidence was taken, the defendant seeking to establish the truth of the charges for which justification was pleaded, and the plaintiff to overcome their asserted truth, so far as it could be done by the evidence which was introduced on his behalf. Inasmuch, however, as the plaintiff was entitled to punitive damages in addition to those which he alleged he had sustained both generally and by special averment, everything that legitimately bore upon the question of malice the defendant was entitled to prove.

The rulings in reference to testimony of the character suggested, and which were naturally germane to the subject stated, were not received at least in one instance, and the effect of testimony designed to justify the charge that the plaintiff was an ex-convict was not given its full legal effect, but limited in its operation in violation of the rules of evidence.

The first publication was predicated of a dispatch received by the Boston correspondent of the defendant from Bangor, in the state of Maine, which charged, amongst other things, that the plaintiff had been indicted for violating the laws of that state, and compelled to pay a heavy fine, and to serve a term of imprisonment in the Hancock county jail. The article based upon this stated, amongst other things, that he was indicted for the offense of swindling a relative, tried, convicted and sentenced to pay a heavy fine and to serve a term in jail.

There was a decided discrepancy between the original dispatch and the publication, the original dispatch only stating in reference to a conviction that the plaintiff had been indicted and convicted for violating the laws of the state of Maine.

Mr. Bryant, the Boston correspondent of the defendant, was asked whether he could state how the discrepancy between the two dispatches, that which was received from Maine, and that which he sent to the defendant in a condensed form, occurred. The question was objected to by the plaintiff as immaterial and incompetent and the objection sustained; to which the defendant excepted. The witness then stated that the dispatch was sent to the defendant by him in entire good faith, and in the belief that the facts stated in it were true. He was then asked what were the grounds of his belief, and this was objected to as immaterial. A colloquy then took place between the court and the defendant's counsel, but the result was that the question with regard to the attempted explanation of the discrepancy

37

remained intact, and the explanation was, therefore, excluded.

The importance of this evidence is made clear from the fact that the learned justice in submitting the case to the jury charged them that if the evidence showed that the defendant acted in good faith and used all proper and reasonable care and caution in procuring the news items complained of, that fact should be taken into consideration by them in mitigation of damages ; and further that if the publication was made in good faith and in the belief that it was true, the plaintiff would not under such circumstances be entitled to exemplary damages. The learned judge also charged that this being an action for libel the defendant, although pleading a justification in part, might, notwithstanding, prove mitigating circumstances : and further, that if the jury believed that an unintentional error crept into the dispatch in condensing the news in the Boston office they should not consider that as showing malice if it was unintentional and made in good faith.

The object of the evidence considered, and which was excluded might have had a very important bearing upon the question of punitive damages, for the reason that the defendant's object was to show that the error was unintenional and therefore not malicious. It thus not only related to that part of the charge of the learned judge already suggested, namely, that if an unintentional error crept into the dispatch, the change occasioned by it, in the character of the original dispatch, was not to be considered as evidence of malice, but also to the assertion that the plaintiff was convicted for swindling, and which was a very important feature of the defamatory publication. The result was that while it was declared that if the discrepancy was " unintentional and in good. faith" it must " not be considered as evidence of malice," the evidence leading to an explanation which might have shown it to be unintentional and in good faith, and thus deprive it of any malicious element, was excluded.

There can be no doubt that this was error. It was in hostility to the rule in relation to punitive damages which the learned judge laid down for guidance of the jury on that subject, and evidence was clearly admissible to disprove malice, if the explanation sought could be satisfactorily made.

In actions of this character the damages are compensatory and punitive, Bush v. Prosser, 11 N. Y. 347, and the rule is well settled, as stated by Mr. Starkie, that the defendant may, with a view to the damage, give evidence to disprove the existence of a malicious motive at the time of publishing the defamatory matter. Folkard's Starkie. on Sl. & L. Wood's Notes, 720.

The adjudicated cases bearing upon this principle are numerous and uniform. Bennett v. Smith, 23 Hun, 50—53 ; Taylor v. Church, 8 N. Y. 452 ; McKown v. Hunter, 30 N. Y. 625 ; Dolevin v. Wilder, 34 How. Pr. 488; Bush v. Prosser, *supra.* In Bennett v. Smith, the defendant called on his own behalf was asked in regard to the libel, " Why did you write it ? " but the question was excluded. This was held to be erroneous. The law, it was said, in that cause presumes the existence, not the character of the defendant's malice. That character, therefore, becomes a material fact, and hence the defendant's motive or intent equally material.

In Dolevin v. Wilder it is said that one of the rules of evidence is to admit proof of any fact which may possibly bear on the question of malice.

In Taylor v. Church, the plaintiff's witness, who was employed to print the defamatory matter, was asked whether the defendant requested him to do it in as private and confidential a way as he could, and whether it was not agreed between him and the defendant that it should be done in that manner, which was excluded. This was held to be error.

JEWETT, J., said the evidence called for was pertinent and

material in respect to the motives of the defendant in procuring the publication complained of. It tended to disprove that the defendant was influenced by malice to injure the plaintiff by publication, and therefore pertinent upon the question in respect to the amount of damages to be given beyond a full compensation for the injury by way of punishment or example. See also, Samuels *v.* Evening Mail Assn., 9 Hun, 295, where it is said by DAVIS, P. J., that when the defendant gives evidence tending to prove absence of malice, then it is the duty of the judge to submit to the jury the question, as one of fact, whether such malice existed in the publication. This view was affirmed in 75 N. Y. 604, the court of appeals adopting the dissenting opinion of the presiding justice in this court. The rule, it must be observed, requires the admission of evidence tending to show the absence of actual malice as contradistinguished from malice presumed, and for the reason that if such proof be not given the double burden may be imposed, one for a proper compensation for injury sustained and the other one by way of exemplary punishment.

It appears further that during the cross-examination of the plaintiff the defendant's counsel produced an authenticated copy of the record of the conviction of the plaintiff for violating the Maine liquor law, and this incident occurred after he had stated that he was tried by a jury for such an offense, found guilty and sentenced to imprisonment in the county jail, which he therein served.

This was admitted, however, only as a part of the cross-examination of the witness and declared by the court competent only for that purpose, and in the course of the charge the jury were substantially told that the conviction mentioned was to be considered by them in determining the truth or the credibility that should be given to the plaintiff's testimony ; and for that reason and for that reason only the judge said it was admissible in evidence. To this the defendant's counsel excepted, the exception appearing upon

the record being " The defendant's counsel duly excepted to that part of the charge in which the court charged that the record of conviction put in evidence can only go to the credibility of the plaintiff." This part of the charge appears to have been erroneous. The object of the record was to show the statement that the plaintiff was an ex-convict is true. The defendant insists upon this subject and properly that a person who is found guilty by a proper tribunal of a crime against the laws of any state becomes by virtue thereof a convict, and thereafter he is correctly termed an ex-convict. This might perhaps under some circumstances be regarded as a very ungenerous view of the subject, but it is nevertheless legally correct. All the definitions of the words " convict " and " conviction," as asserted by the defendant's counsel, in the English lexicons and law dictionaries in general use, as well as by the chief text writers, agree in including within the term convict every person duly found guilty by a legal tribunal of a crime, whether it be a misdemeanor or a felony. Webster's English Dictionary; Worcester's Unabridged Dictionary; Burrill's Law Dictionary; Bouvier's Law Dictionary; Stormouth's English Dictionary. By the Code of Criminal Procedure, § 3, it is provided that no person can be punished for a crime except upon legal conviction in a court having jurisdiction thereof. And in Blaufus *v.* The People, 69 N. Y. 109, FOLGER, J., said: " In ordinary phrase, the meaning of the word conviction is the finding by a jury of a verdict that the accused is guilty." And again, in Schiffer *v.* Pruden, 64 N. Y. 52, the same judge also said: " Doubtless the word conviction ordinarily signifies the finding by a jury of a verdict that the accused is guilty. Yet the word sometimes denotes the final judgment of the court."

If by the phrase *ex-convict* the defendant meant to assert that the plaintiff was an ex-convict because he had been convicted of the offense of swindling a relative and sentenced therefor as charged in the first publication, the designation

was unjustified, and doubtless it was this view which controlled the learned justice in the court below in limiting the effect of a record showing a conviction for another offense. Nevertheless the question of what was intended should have been submitted to the jury, as was done in the case of Perry *v.* Man, 1 R. I. 263. There the libel was in a printed circular in which the person was called a " convicted felon." In justification the defendant was permitted to allege and prove that the plaintiff had been convicted upon a charge of violating the excise law. The learned judge there said :

" If the jury think the term ' convicted felon ' in the publication, taken in connection with the context, and with the evidence in the cause, would be understood by the public to mean only an offender against the license law, then the plaintiff has no cause of action for this part of the publication. If, on the other hand, the jury think the terms are to be understood in the strictly legal and technical sense, then the defense of this part of the publication fails." And this latter view was predicate of the proposition that at common law the term felony comprehended a large class of high crimes as well as those of a less atrocious character ; felony at common law, however, always drawing after it a forfeiture of goods and chattels. The limitation placed upon the effect of the record, therefore, and by which as we have seen it was admitted only for the purpose of affecting the plaintiff's credibility and for no other purpose, was erroneous. It should be borne in mind in considering this feature of the appeal that the plaintiff was designated generally as an ex-convict in the *second* publication and not directly in connection with the charge of swindling which was also general, although it might have been found by the jury to have meant that upon proper deliberation upon that subject under the guidance of the court.

The learned judge, however, by his ruling excluded absolutely all other considerations, and the defendant had no benefit whatever of the proof mentioned relating to that

issue.   Although other questions are presented on behalf of the defendant by exceptions duly taken, it is not deemed necessary to consider them, inasmuch as those considered make it necessary for us to reverse the judgment and order a new trial.

MACOMBER, J.—I concur.   I also concur in that portion of the opinion of the presiding justice which holds to be erroneous the ruling of the trial court by which the facts and circumstances showing the good faith of the sender of the condensed dispatch were excluded.

VAN BRUNT, P. J.—I cannot concur in the conclusion arrived at by Mr. Justice BRADY in respect to some of the rulings upon which he founds his conclusion that the judgment appealed from should be reversed and a new trial ordered.

It is said that the learned judge erred in limiting the effect of the judgment roll showing that the plaintiff had been convicted of violating the excise law of the state of Maine to the question of his credibility.   An examination of the publications complained of shows conclusively that the word " ex-convict " was used in connection with the charge of swindling his relatives, and that it in no manner referred to any other offense for which the plaintiff had been tried and convicted.

The publication of the 7th of May expressly states that the plaintiff was indicted for the offence of swindling his employers, tried, convicted and sentenced therefor to pay a heavy fine and to a term in jail.   The publication of the 9th of May, 1885, calls plaintiff a swindler and ex-convict, and that the term " ex-convict " was applied because of a conviction for swindling and was intended to refer to such a conviction and nothing else is evident from another clause of the same article which says, " It gladdens the heart of the mugwump, does it, to learn that a man who has served his

term in prison for swindling is now chosen treasury agent by a reform president."

Under this state of the proof there was no opportunity for the jury to draw the conclusion that the term ex-convict was used in any other connection than that referring to his conviction for the offense of swindling. There seems, therefore, to have been no error committed by the learned judge in excluding this record of the conviction of the plaintiff for violation of the excise law from the consideration of the jury except so far as it impaired his credibility.

The exclusion of the question, " Can you state how the discrepancy between the two occurred ? "

The whole of the paragraph which concluded with this question is as follows :

" In the original dispatch, as received by you, occurs the following : ' Mr. Cameron came to Ellsworth, Maine, from Aberdeen, Scotland, before he was of age, and went to work for a relative at that place for $15 a month. At the expiration of about two years and a half he had swindled his employer out of about $4,000, leaving him nearly ruined; and he had also been indicted for violating the law of the state of Maine, and compelled to pay a heavy fine and serve a term of imprisonment in the Hancock County Jail.' The condensed dispatch reads : ' At the end of a couple of years his employer found that his relative had nearly ruined him, swindling him out of several thousand dollars. He was indicted for the offence, tried, convicted and sentenced to pay a heavy fine and to serve a term in jail.' Can you state how the discrepancy between those two occurred ? "

This question called for facts, those facts and circumstances which caused the witness to fall into the error which was contained in the condensed dispatch. Although I do not think that the mental operations of the witness were competent evidence, yet the facts and circumstances surrounding the sending of the condensed dispatch were very pertinent upon the question of malice.

These the witness was not allowed to state, except in a very restricted manner, and he was expressly precluded from stating by an express ruling what the witness knew of the character of the sender of the original dispatch. This certainly was an important element to be considered by the jury in determining whether punitive damages should be imposed or not, and also the amount; although the high character of the sender might. not entirely excuse, it might mitigate in the minds of the jury.

The witness, therefore, was not allowed to state the facts and circumstances attending the sending of the condensed dispatch, and after he had testified that this dispatch was sent in entire good faith and in the belief that the facts stated were true he was precluded from showing why he believed it to be true, or that he had not given credence to the statements of a mere adventurer, but had relied upon the representations of a person of character and standing.  · I cannot but conclude that the exclusion of this evidence worked great injustice to the defendant, and that because of it the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide event.

NOTE.

As to the admissibility of a record of conviction to impeach a witness, see Sisson *v.* Yost, 58 Hun, 609; Wolkoff *v.* Tefft, 35 N. Y. St. Rep. 93 ; Sims *v.* Sims, 75 N. Y. 467; Spiegel *v.* Hays, 118 N. Y. 660; People *v.* Noelke, 94 Id. 137; People *v.* Irving, 95 Id. 541; Peal *v.* People, 42 Id. 280 ; Newcomb *v.* Griswold, 24 Id. 298; Morenus *v.* Crawford, 51 Hun, 89.